☐ Small Claims  ☐ County Court  ☒ District Court
☐ Probate Court  ☐ Juvenile Court  ☐ Water Court
Pueblo County, Colorado

Court Address: Pueblo County Judicial Building,
320 West Tenth Street, Pueblo, Colorado 81003

JOHN DOE NO. 5,

    Plaintiff,

v.

DIOCESE OF PUEBLO, a corporation sole, and
THE MARIANISTS PROVINCE OF THE
UNITED STATES, INC.,

    Defendants

▲ COURT USE ONLY ▲

Case Number:

Div.:  Ctrm:

Alan G. Molk, No. 10988
Attorney for Plaintiff
6400 So. Fiddlers' Green Circle, Ste # 1920
Englewood, Co. 80111
Phone (303) 290-8808
Fax (303) 290-8851
E-Mail alanmolk@aol.com

Jeffrey M. Herman, Esq.
(not yet admitted Pro Hac Vice)
HERMAN & MERMELSTEIN, P.A.
18205 Biscayne Blvd.
Suite 2218
Miami, Florida 33160
www.hermanlaw.com

Phone Number: (305) 931-2200
FAX Number: (305) 931-0877
E-mail: jherman@hermanlaw.com
Atty. Reg. #:

**COMPLAINT**

Plaintiff, JOHN DOE NO. 5, hereby brings this Complaint against Defendants,

DIOCESE OF PUEBLO and THE MARIANISTS PROVINCE OF THE UNITED STATES, INC., and alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, JOHN DOE NO. 5, is an adult male who resides in Pueblo, Colorado. Plaintiff is identified by the pseudonym JOHN DOE NO. 5 in that this case involves childhood sexual abuse.

2. Defendant, DIOCESE OF PUEBLO, is a corporation sole responsible for the interests of the Roman Catholic Church in southern Colorado. The DIOCESE OF PUEBLO's jurisdiction and responsibilities include all Catholic schools within its geographical boundaries. At all material times, the DIOCESE OF PUEBLO owned and operated Roncalli High School, an all-boys Catholic high school in Pueblo, Colorado.

3. Defendant, MARIANISTS PROVINCE OF THE UNITED STATES, INC. ("MARIANISTS"), is a Catholic religious Order and non-profit Missouri corporation doing business in Colorado. At all relevant times, MARIANISTS staffed and administered Roncalli High School with priests and monks from the Society of Mary. Defendants, DIOCESE OF PUEBLO and MARIANISTS, are collectively referred to herein as the "Church" or "Defendants."

4. At all material times, Brother William Mueller ("BROTHER MUELLER") was a member of the MARIANISTS' Religious Order and a band director at Roncalli High School. BROTHER MUELLER was a popular teacher at Roncalli High School who was often hugging and wrestling with the students.

5. Upon information and belief, Defendant, the DIOCESE OF PUEBLO's principal place of business is within the City and County of Pueblo, making venue proper.

## BACKGROUND

6. The Church offers many opportunities for minors and families to become active and involved in Church activities. As a result, priests, clergy, and members of Religious Orders

have abundant and frequent contacts with minors, individually and in groups.

7. Because of the opportunities to be with minors, The Church attracts many truly caring and giving individuals; however, at the same time, service in The Church attracts an extraordinary number of pedophiles, child molesters and sex abusers.

8. Officials and religious figures at the highest levels of The Church are well aware of the attraction of The Church to those who will do serious harm to minors.

9. Such persons who will do serious harm to minors seek employment by The Church as clergy, where they will obtain privacy with minors and control over them. As religious figures, they wield enormous influence over minors, who are required to address them as "Father", "Brother", or such other terms connoting love and authority.

10. Religious figures in The Church are bestowed with an heir of infallibility, and are considered conduits for Catholics to make a connection with the deity and live more meaningful lives.

11. As a result, when these seemingly infallible holy men commit unspeakable, perverted sexual acts with minors, it has an extraordinarily traumatic effect on the victims, psychologically and emotionally.

12. Instead of exercising due care and diligence to protect minors under these circumstances from the serious harm described above, The Church gives clergy complete discretion and freedom to have personal and private encounters with minors. At the same time, The Church has done nothing to screen abusers or protect minors from the sexual predators who infiltrate its ranks.

13. Quite the opposite, The Church has gone to great lengths to protect "its own." It is the custom, policy and practice of the Roman Catholic Church, through its cardinals, bishops, priests, religious orders, and other officials and agents, to conceal instances of child sexual abuse and complaints by victims. It zealously maintains the secrecy of the horrifying truth of rampant child sexual abuse in The Church, by among other things:

- Failing to disclose complaints to law enforcement officials, parishioners, students, and the public;
- Maintaining secret archives and files of evidence of sex abuse, accessible only to bishops;
- Instructing Church officials in destruction of incriminating documents and spoliation of evidence regarding sexual abuse by clergy;
- Transferring sex offending clergy to The Church facilities in other locations where their pasts would not be known, and the abusers would have a "fresh start" with a new group of vulnerable children;
- Threatening and coercing victims and their families to withdraw complaints and retract allegations of sexual abuse;
- Paying "hush money" to victims and their families, in exchange for promises of non-disclosure and confidentiality.

14. Each of the acts and practices set forth above are done to protect and shelter the abuser; obstruct justice; conceal criminal conduct; evade prosecution; avoid being compelled by criminal and civil courts to turn over information or allegations regarding child sexual abuse; avoid public awareness and scandal about pedophile clergy; and avoid financial loss.

15. The Church's conduct is outrageous given the enormous trust and confidence placed in its religious figures. The Church actively solicits and encourages this trust and confidence from parishioners and the public.

## SEXUAL ABUSE OF JOHN DOE NO. 5

16. JOHN DOE NO. 5 was born in June 1954. He was raised as a devout Catholic and participated in the Church as an altar boy during his youth.

17. JOHN DOE NO. 5 attended Roncalli High School in Pueblo, Colorado from 1968 through 1970 for his freshman and sophomore years of high school. At Roncalli, JOHN DOE NO. 5 participated in the school band, which was directed by BROTHER MUELLER. JOHN

DOE was also enrolled in two religion courses taught by BROTHER MUELLER.

18. JOHN DOE NO. 5 worked after school at Roncalli to help pay his tuition. His duties included cleaning the school's classrooms and hallways. On one occasion, BROTHER MUELLER approached JOHN DOE NO. 5 while he was working to ask JOHN DOE NO. 5 about school and his social life. JOHN DOE NO. 5 explained that he was going to have to transfer from Roncalli in that his family was moving to New Mexico.

19. BROTHER MUELLER excused himself from the room and said he would be right back. When BROTHER MUELLER returned, JOHN DOE NO. 5 had his back toward BROTHER MUELLER. BROTHER MUELLER snuck up to JOHN DOE NO. 5 from behind and placed a cloth soaked in ether over JOHN DOE NO. 5's mouth and nose. JOHN DOE NO. 5 struggled to escape, but he was violently overpowered by BROTHER MUELLER. JOHN DOE NO. 5 quickly passed out.

20. While JOHN DOE NO. 5 was laying helpless, BROTHER MUELLER removed JOHN DOE NO. 5's clothing and sexually abused the minor.

21. BROTHER MUELLER abused other students at Roncalli High School in the same manner that he abused JOHN DOE NO. 5. BROTHER MUELLER also abused students at other schools where he was assigned by the MARIANISTS.

22. At the time he was sexually abused, JOHN DOE NO. 5 was unaware that Defendants knew that BROTHER MUELLER sexually abused other students. Thus, JOHN DOE NO. 5 was also unaware that the Defendants' failure to take any action against BROTHER MUELLER contributed to his own abuse.

23. After finding out about BROTHER MUELLER's sexual abuse of minors, the Defendants actively took steps to conceal the abuse in order to protect BROTHER MUELLER, conceal Defendants' own wrongdoing in supervising BROTHER MUELLER, and prevent JOHN DOE NO. 5 and other victims of BROTHER MUELLER from filing a civil lawsuit.

24. BROTHER MUELLER and JOHN DOE NO. 5 were in a fiduciary relationship.

BROTHER MUELLER held a special position of trust and confidence with JOHN. JOHN DOE NO. 5 looked to BROTHER MUELLER for counseling and guidance.

25. The Defendants were in a fiduciary relationship with JOHN DOE NO. 5. JOHN DOE NO. 5 placed his trust and confidence in the Defendants' institutions. JOHN DOE NO. 5 looked to the Defendants and their representatives for counseling and guidance. In addition, the Defendants knew that JOHN DOE NO. 5 had a special and privileged relationship with BROTHER MUELLER. Each Defendant owed JOHN DOE NO. 5 a fiduciary duty to:

    (a) Investigate and warn JOHN DOE NO. 5 of the potential for harm from BROTHER MUELLER;

    (b) Disclose its awareness of facts regarding BROTHER MUELLER that created a likely potential for harm;

    (c) Disclose its own negligence with regard to hiring, supervision and retention of BROTHER MUELLER;

    (d) Provide a safe environment for JOHN DOE NO. 5 where he would be free from abuse; and

    (e) Protect JOHN DOE NO. 5 from exposure to harmful individuals like BROTHER MUELLER.

26. Each Defendant breached its fiduciary duty to JOHN DOE NO. 5 by failing to:

    (a) Investigate and warn JOHN DOE NO. 5 of the potential for harm from BROTHER MUELLER;

    (b) Disclose its awareness of facts regarding BROTHER MUELLER that created a likely potential for harm;

    (c) Disclose its own negligence with regard to hiring, supervision and retention of BROTHER MUELLER;

    (d) Provide a safe environment for JOHN DOE NO. 5 where he was free from abuse; and

Herman & Mermelstein, p.a.  
www.hermanlaw.com  
Page 6

(e) Protect JOHN DOE NO. 5 from exposure to harmful individuals like BROTHER MUELLER.

27. Each Defendant actively and fraudulently concealed information pertinent and relevant to claims relating to the sexual abuse in this matter for the purpose of protecting itself from civil liability and evading same.

## *NEGLIGENCE*

28. Plaintiff repeats and re-alleges Paragraphs 1 through 27 above.

29. At all material times, the Defendants owed a duty to Plaintiff to use reasonable care to ensure the safety, care, well being and health of the Plaintiff while he was under their care, custody or in the presence of their agents or employees. The Defendants' duties encompassed the hiring, retention and/or supervision of BROTHER MUELLER and otherwise providing a safe environment at Roncalli High School.

30. The Defendants breached these duties by failing to protect the minor Plaintiff from sexual assault and lewd and lascivious acts committed by their agent and/or employee, BROTHER MUELLER, at Roncalli High School.

31. At all relevant times, the Defendants knew or in the exercise of reasonable care should have known that BROTHER MUELLER was unfit, dangerous, and a threat to the health, safety and welfare of the minors entrusted to his counsel, care and protection.

32. Despite such actual or constructive knowledge, the Defendants provided BROTHER MUELLER unfettered access to JOHN DOE NO. 5 and gave him unlimited and uncontrolled privacy.

33. At all relevant times, the Defendants created an environment which fostered child sexual abuse against children it had a duty to protect, including JOHN DOE NO. 5.

34. At all relevant times, the Defendants had inadequate policies and procedures to protect children it was entrusted to care for and protect, including JOHN DOE NO. 5.

35.    As a direct and proximate result of Defendants' negligence, JOHN DOE NO. 5 has suffered severe and permanent psychological, emotional and physical injuries, including but not limited to severe depression, loss of faith, dysfunctional relationships, shame, humiliation and the inability to lead a normal life. Plaintiff's injuries are persistent, permanent, and debilitating in nature.

WHEREFORE, Plaintiff, JOHN DOE NO. 5, prays that judgment be entered in his favor and against the Defendants, the DIOCESE OF PUEBLO and THE MARIANIST PROVINCE OF THE UNITED STATES, INC., jointly and severally, for compensatory damages, costs, expert witness fees, deposition expenses, pre- and post-judgment interest and for such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action.

Dated: November 11, 2005.

Respectfully submitted,

LAW FIRM OF ALAN G. MOLK
By: Duly signed original in office of Alan G. Molk
Alan G. Molk, #10988

-and-

HERMAN & MERMELSTEIN, P.A.
jherman@hermanlaw.com
www.hermanlaw.com
Jeffrey M. Herman, Esq.
Stuart S. Mermelstein, Esq.
Adam D. Horowitz, Esq.
18205 Biscayne Blvd.
Suite 2218
Miami, Florida 33160
Telephone: 305-931-2200
Facsimile: 305-931-0877