| | |
|---|---|
| DISTRICT COURT, COUNTY OF PUEBLO, STATE OF COLORADO<br><br>320 West Tenth Street<br>Pueblo, Colorado  81003 | ▲ COURT USE ONLY ▲ |
| Plaintiff:   John Doe No. 7<br><br>Defendant:  Diocese of Pueblo, a corporation sole | Number:<br><br>Div:        Ctrm: |
| Attorneys for Plaintiff:<br>Alan G. Molk<br>6400 S. Fiddler's Green Circle, Suite 1920<br>Englewood, CO 80111<br>Phone 303-290-8808<br>Fax    303-290-8851    Atty. Reg. #: 10988<br><br>Jeffrey M. Herman, Esq.<br>Herman & Mermelstein, P.A.<br>18205 Biscayne Blvd., Suite 2218<br>Miami, FL  33160<br>Phone 305-931-2200<br>Fax 305-931-0877<br>Email: jherman@hermanlaw.com<br>Atty. Reg. #: (not yet admitted Pro Hac Vice) | |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT**

1.  This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases.

2.  Check the boxes applicable to this case:

___  Simplified Procedure under C.R.C.P. 16.1 applies to this case because this party does not seek a monetary judgment in excess of $100,000.00 against another party, including any attorney fees, penalties or punitive damages, but excluding interest and costs and because this case is not a class action or forcible entry and detainer, Rule 106, Rule 120, or other expedited proceeding.

_X_  Simplified Procedure under C.R.C.P. 16.1, **does not apply** to this case because (check one box below identifying why 16.1 does not apply):

  ___  This is a class action or forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, or

  _X_  This party is seeking a monetary judgment for more than $100,000.00 against another party, including any attorney fees, penalties, or punitive damages, but excluding interest and costs (see C.R.C.P. 16.1), or

  ___  Another party has previously stated in its cover sheet that C.R.C.P. 16.1 does not apply to this case.

3.   ___  This party makes a **Jury Demand** at this time and pays the requisite fee. See. C.R.C.P. Checking this box is optional.

Dated this 29th day of November, 2005.

                                    LAW FIRM OF ALAN G. MOLK


                              By:   Duly signed original in office of Alan Molk
                                    Alan G. Molk, #10988


**NOTICE:**

*This cover sheet must be filed in all District Court (CV) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading, but may result in a clerk's show cause order requiring its filing.

*This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint.

*This cover sheet shall not be considered a pleading for purposes of C.R.C.P. 11.


Your transaction has been successfully submitted to LexisNexis File & Serve. Your transaction information appears below.
To print this information for your records, click anywhere on the transaction information, then click the browser Print button.
To perform another transaction, click **Begin a New Transaction**.
To exit File & Serve, click **Return to My File & Serve**.

## LexisNexis File & Serve Transaction Receipt

| | |
|---|---|
| Transaction ID: | 7530367 |
| Submitted by: | Gretchen Doyle, Molk, Alan |
| Authorized by: | Alan Geoffrey Molk, Molk, Alan |
| Authorize and file on: | Nov 29 2005 10:49AM MST |
| Court: | CO Pueblo County District Court 10th JD |
| Case Class: | Civil |
| Case Type: | Negligence |
| Case Name: | John Doe No. 7 vs Diocese of Pueblo, a corporation sole |
| Transaction Option: | Originating Event |
| Billing Reference: | John Doe 7 |

**Documents List**
2 Document(s)

Originating Document, 8 Pages   Document ID: 4675293   View Original   View PDF
Access: Public   Transaction Fee: $286.00   Linked:
Document Type: Complaint and Jury Demand
Document title: Complaint and Jury Demand

Attached Document, 2 Pages   Document ID: 4675297   View Original   View PDF
Access: Public   Transaction Fee: $0.00   Linked:
Document Type: Civil Case Cover Sheet
Document title: Civil Case Cover Sheet

Close All

☐ Sending Parties (1)

| Party | Attorney | Firm |
|---|---|---|
| Doe No. 7, John (pending) | Molk, Alan Geoffrey | Molk, Alan |

☐ Case Parties

| Party | Attorney | Firm |
|---|---|---|
| Diocese of Pueblo, a corporation sole (pending) | Pro Se | Pro Se |
| Doe No. 7, John (pending) | Molk, Alan Geoffrey | Molk, Alan |

[ Begin a New Transaction ]   [ Return to My File & Serve ]   [ Print ]

## PARTIES AND JURISDICTION

1. Plaintiff, JOHN DOE NO. 7, is an adult male who resides in Colorado.

2. Defendant, DIOCESE OF PUEBLO, is a corporation sole responsible for the interests of the Roman Catholic Church in southern Colorado. The DIOCESE OF PUEBLO's jurisdiction and responsibilities include the assignment of priests at all churches and parishes within its geographical boundaries. At all material times, the DIOCESE OF PUEBLO owned and operated St. Pius X, a Catholic church in Pueblo, Colorado.

3. At all material times, Father Andrew A. Burke ("FATHER BURKE") was a Catholic priest assigned by the DIOCESE OF PUEBLO to serve as pastor at St. Piux X in Pueblo, Colorado. At all time material times, FATHER BURKE was an agent, servant and/or employee of the DIOCESE OF PUEBLO. FATHER BURKE was dispensed from his obligations in the ministry in approximately 1973 due to a "psycho-sexual behavior disorder." FATHER BURKE committed suicide on or about September 21, 2005.

4. Upon information and belief, Defendant, the DIOCESE OF PUEBLO's principal place of business is within the City and County of Pueblo, making venue proper.

## BACKGROUND

5. The Church offers many opportunities for minors and families to become active and involved in Church activities. As a result, priests, clergy, and members of Religious Orders have abundant and frequent contacts with minors, individually and in groups.

6. Because of the opportunities to be with minors, The Church attracts many truly caring and giving individuals; however, at the same time, service in The Church attracts an extraordinary number of pedophiles, child molesters and sex abusers.

7. Officials and religious figures at the highest levels of The Church are well aware of the attraction of The Church to those who will do serious harm to minors.

8. Such persons who will do serious harm to minors seek employment by The Church as clergy, where they will obtain privacy with minors and control over them. As

religious figures, they wield enormous influence over minors, who are required to address them as "Father", "Brother", or such other terms connoting love and authority.

9. Religious figures in The Church are bestowed with an heir of infallibility, and are considered conduits for Catholics to make a connection with the deity and live more meaningful lives.

10. As a result, when these seemingly infallible holy men commit unspeakable, perverted sexual acts with minors, it has an extraordinarily traumatic effect on the victims, psychologically and emotionally.

11. Instead of exercising due care and diligence to protect minors under these circumstances from the serious harm described above, The Church gives clergy complete discretion and freedom to have personal and private encounters with minors. At the same time, The Church has done nothing to screen abusers or protect minors from the sexual predators who infiltrate its ranks.

12. Quite the opposite, The Church has gone to great lengths to protect "its own." It is the practice of the Roman Catholic Church, through its cardinals, bishops, priests, religious orders, and other officials and agents, to conceal instances of child sexual abuse and complaints by victims. It zealously maintains the secrecy of the horrifying truth of rampant child sexual abuse in The Church, by among other things:

- Failing to disclose complaints to law enforcement officials, parishioners, students, and the public;
- Maintaining secret archives and files of evidence of sex abuse, accessible only to bishops;
- Instructing Church officials in destruction of incriminating documents and spoliation of evidence regarding sexual abuse by clergy;
- Transferring sex offending clergy to The Church facilities in other locations where their pasts would not be known, and the abusers would have a "fresh

start" with a new group of vulnerable children;

- Threatening and coercing victims and their families to withdraw complaints and retract allegations of sexual abuse;
- Paying "hush money" to victims and their families, in exchange for promises of non-disclosure and confidentiality.

13.   Each of the acts set forth above are done to protect and shelter the abuser; obstruct justice; conceal criminal conduct; evade prosecution; avoid being compelled by criminal and civil courts to turn over information or allegations regarding child sexual abuse; avoid public awareness and scandal about pedophile clergy; and avoid financial loss.

14.   The Church's conduct is outrageous given the enormous trust and confidence placed in its religious figures. The Church actively solicits and encourages this trust and confidence from parishioners and the public.

## SEXUAL ABUSE OF JOHN DOE NO. 7

15.   JOHN DOE NO. 7 was born in July 1960. He was raised as a devout Catholic and participated in the Church as an altar boy during his youth.

16.   In approximately 1970, JOHN DOE NO. 7 met FATHER BURKE, the pastor at St. Pius X in Pueblo, Colorado. JOHN DOE NO. 7's parents were undergoing marital problems, and FATHER BURKE took an active interest in counseling JOHN DOE NO. 7 through this difficult time.

17.   Initially, FATHER BURKE would go out of his way to help JOHN DOE NO. 7 however he could. For instance, when JOHN DOE NO. 7 needed money, FATHER BURKE paid him to handle chores at St. Piux X or in the Church rectory.

18.   It was not long until the dark, sinister side of FATHER BURKE emerged. FATHER BURKE would perform bizarre experiments in the Church rectory. During these "experiments", FATHER BURKE would blindfold and remove JOHN DOE NO. 7's clothing, tie him with tape or strips of cloth to pipes, tickle him, and drip ice on him as part of a human

endurance experiment. While JOHN DOE NO. 7 was restrained, FATHER BURKE would masturbate and/or straddle JOHN DOE NO. 7 while rubbing his genitals against the minor victim. Upon information and belief, FATHER BURKE also plied JOHN DOE NO. 7 with alcohol to facilitate the abuse. These "experiments" and bizarre sexual rituals continued on a regular basis for approximately three to four years.

19. FATHER BURKE abused other minors in the same or similar manner that he abused JOHN DOE NO. 7. FATHER BURKE also abused parishioners at other churches where he was assigned by the DIOCESE OF PUEBLO.

20. At the time he was sexually abused, JOHN DOE NO. 7 was unaware that Defendant knew that FATHER BURKE sexually abused other young boys. Thus, JOHN DOE NO. 7 was also unaware that the Defendant's failure to take any action against FATHER BURKE contributed to his own abuse.

21. After finding out about FATHER BURKE's sexual abuse of minors, the Defendant actively took steps to conceal the abuse in order to protect FATHER BURKE, conceal Defendant's own wrongdoing in supervising FATHER BURKE, and prevent JOHN DOE NO. 7 and other victims of FATHER BURKE from filing a civil lawsuit.

22. FATHER BURKE and JOHN DOE NO. 7 were in a fiduciary relationship. FATHER BURKE held a special position of trust and confidence with JOHN. JOHN DOE NO. 7 looked to FATHER BURKE for counseling and guidance.

23. The Defendant was in a fiduciary relationship with JOHN DOE NO. 7. JOHN DOE NO. 7 placed his trust and confidence in the Defendant's institutions. JOHN DOE NO. 7 looked to the Defendant and its representatives for counseling and guidance. In addition, the Defendant knew that JOHN DOE NO. 7 had a special and privileged relationship with FATHER BURKE. Each Defendant owed JOHN DOE NO. 7 a fiduciary duty to:

    (a) Investigate and warn JOHN DOE NO. 7 of the potential for harm from FATHER BURKE;

    (b)    Disclose its awareness of facts regarding FATHER BURKE that created a likely potential for harm;

    (c)    Disclose its own negligence with regard to hiring, supervision and retention of FATHER BURKE;

    (d)    Provide a safe environment for JOHN DOE NO. 7 where he would be free from abuse; and

    (e)    Protect JOHN DOE NO. 7 from exposure to harmful individuals like FATHER BURKE.

24.    Each Defendant breached its fiduciary duty to JOHN DOE NO. 7 by failing to:

    (a)    Investigate and warn JOHN DOE NO. 7 of the potential for harm from FATHER BURKE;

    (b)    Disclose its awareness of facts regarding FATHER BURKE that created a likely potential for harm;

    (c)    Disclose its own negligence with regard to hiring, supervision and retention of FATHER BURKE;

    (d)    Provide a safe environment for JOHN DOE NO. 7 where he was free from abuse; and

    (e)    Protect JOHN DOE NO. 7 from exposure to harmful individuals like FATHER BURKE.

25.    Each Defendant actively and fraudulently concealed information pertinent and relevant to claims relating to the sexual abuse in this matter for the purpose of protecting itself from civil liability and evading same.

### *NEGLIGENCE*

26.    Plaintiff repeats and re-alleges Paragraphs 1 through 25 above.

27.    At all material times, the Defendant owed a duty to Plaintiff to use reasonable care to ensure the safety, care, well being and health of the Plaintiff while he was under their

care, custody or in the presence of their agents or employees. The Defendant's duties encompassed the hiring, retention and/or supervision of FATHER BURKE and otherwise providing a safe environment for its parishioners.

28. The Defendant breached these duties by failing to protect the minor Plaintiff from sexual assault and lewd and lascivious acts committed by their agent and/or employee, FATHER BURKE.

29. At all relevant times, the Defendant knew or in the exercise of reasonable care should have known that FATHER BURKE was unfit, dangerous, and a threat to the health, safety and welfare of the minors entrusted to his counsel, care and protection.

30. Despite such actual or constructive knowledge, the Defendant provided FATHER BURKE unfettered access to JOHN DOE NO. 7 and gave him unlimited and uncontrolled privacy.

31. At all relevant times, the Defendant created an environment which fostered child sexual abuse against children it had a duty to protect, including JOHN DOE NO. 7.

32. At all relevant times, the Defendant had inadequate policies and procedures to protect children it was entrusted to care for and protect, including JOHN DOE NO. 7.

33. As a direct and proximate result of Defendant's negligence, JOHN DOE NO. 7 has suffered severe and permanent psychological, emotional and physical injuries, including but not limited to psychic disassociation, traumatic amnesia, severe depression, loss of faith, dysfunctional relationships, shame, humiliation and the inability to lead a normal life. Plaintiff's injuries are persistent, permanent, and debilitating in nature.

WHEREFORE, Plaintiff, JOHN DOE NO. 7, prays that judgment be entered in his favor and against the Defendant, the DIOCESE OF PUEBLO, for compensatory damages, costs, expert witness fees, deposition expenses, pre- and post-judgment interest and for such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action.

Dated: November ___ 2005.

                        Respectfully submitted,

                        LAW FIRM OF ALAN G. MOLK
                        By: Duly signed original in office of Alan G. Molk
                        Alan G. Molk, #10988

                              -and-

                        HERMAN & MERMELSTEIN, P.A.
                        jherman@hermanlaw.com
                        www.hermanlaw.com
                        Jeffrey M. Herman, Esq.
                        Stuart S. Mermelstein, Esq.
                        Adam D. Horowitz, Esq.
                        18205 Biscayne Blvd.
                        Suite 2218
                        Miami, Florida 33160
                        Telephone: 305-931-2200
                        Facsimile: 305-931-0877